The **BOARD OF COMMISSIONERS OF HENRY COUNTY, Indiana** and The **Henry County Council, Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS,**
**Respondent.**

**No. 49T05–8802–TA–00007.**

Tax Court of Indiana.

Oct. 26, 1988.

Nancy Brown, New Castle, for petitioners.

Linley E. Pearson, Atty. Gen. by Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Henry County Board of Commissioners and the Henry County Council appeal the final determination of the State Board of Tax Commissioners, which denied the county's request for an appropriation for the demolition of a building. The county and State Board have filed cross motions for summary judgment.

The State Board does not challenge the facts as set out by the county. Henry County acquired real estate known as the Potter Building when the property failed to sell at a tax sale. The Potter Building was in a state of disrepair. It was located across the street from the Henry County Court building, which had inadequate parking facilities. The Henry County Board of Commissioners decided that the Potter Building should be demolished and the land used to provide parking for the courthouse. It petitioned the Henry County Council to appropriate $35,000 from the county's Cumulative Capital Development Fund to demolish the Potter Building. The Council approved the appropriation, and passed the following ordinance:

> WHEREAS: Certain extraordinary emergencies have developed since the adoption of the existing annual budget, so that it is now necessary to appropriate more money than was appropriated in the annual budget, now therefore, to meet such extraordinary emergencies:
>
> SECTION 1, BE IT ORDAINED, by the Henry County Council of Henry County, Indiana, that for expenses of said County Government and its institutions the following sums of money are hereby named for the purposes herein specified, subject to the laws governing the same:

| CUMULATIVE CAPITAL DEVELOPMENT | AMOUNT REQUESTED | AMOUNT ALLOWED |
|---|---|---|
| Demolition of Potter Building | $35,000.00 | $35,000.00 |

The additional appropriation was subject to approval by the State Board of Tax Commissioners under IC 6–1.1–18–5. The hearing officer concluded that although the statutory procedural requirements were met, the additional appropriation petition should be denied because Henry County lacked the statutory authority to spend the money from the Cumulative Capital Development Fund to demolish the Potter Building under IC 36–9–14.5–1 et seq. The State Board adopted the hearing officer's recommendation and denied the petition for additional appropriation. This appeal followed.

The issue presented is whether the State Board's denial of the additional appropriation petition is contrary to law because the expenditure for the demolition of the Potter Building is for the purpose of construction, remodeling, and repair of courthouses as authorized by IC 36–9–14–2 (Supp.1987). In order to resolve the issue the court must determine whether the term "courthouse" should be construed to include a parking lot and whether the term "construction" should be construed to include demolition of existing structures in order to erect needed improvements.

The county contends expenditures "for the construction, remodeling, and repair of courthouses," as the terms are used in IC 36–9–14–2, necessarily include expenditures for the construction of a parking lot for the courthouse. As the demolition of the Potter Building is the first step in the construction of the parking lot, and the parking lot is an integral component of the courthouse, the county contends that it is authorized to appropriate money from the Cumulative Capital Development Fund to demolish the Potter Building under IC 36–9–14.5–1 et seq.

The State Board contends that the county's proposed use of the money from the Cumulative Capital Development Fund is not within the scope of IC 36–9–14–2 because the definition of "courthouse" does not include a courthouse parking lot and the definition of "construction" does not include the demolition of a building.

The Cumulative Capital Development Fund was established pursuant to IC 36–9–14.5–2 (Supp.1987), which provides:

> The county legislative body may, with the approval of the state board of tax commissioners, establish a cumulative capital development fund to provide money for any purpose for which property taxes may be imposed within the county under the authority of: ... IC 36–9–14....

IC 36–9–14–2 (Supp.1987) authorizes the county to establish a fund "to provide money for the construction, remodeling, and repair of courthouses."

The county argues that the State Board's proposed definition of "courthouse" is too narrow because a courthouse is composed of more than four walls and a roof. Plumbing, heating, landscaping, exterior sidewalks, and parking facilities constitute necessary and integral parts of a courthouse as well. There appears to be no Indiana case law which assists the court in this matter. However, the court finds *County of Essex v. Hindenlang* (1955), 35 N.J.Super. 479, 114 A.2d 461, to be persuasive for the proposition that parking facilities constitute a necessary component of a courthouse.

In *Hindenlang*, a landowner challenged the county's power to condemn his land for use as a parking lot for the county courthouse. The county had statutory authority to condemn real estate in order to "acquire and maintain such buildings as may be necessary and suitable for the accommodation of the courts ... or any other public purpose." The court held that the statute gave the county express authority to condemn property for a courthouse and implied authority to condemn property for a parking lot. 114 A.2d at 465. The court stated that "[t]he acquisition and maintenance of a parking area ... is a necessary and reasonable adjunct to the acquisition and maintenance of a courthouse and administration building." *Id.*

A parking facility is a necessary component of a courthouse. Thus, it is not unreasonable to include parking facilities in the scope of the definition of the term "courthouse". The legislature has similarly defined "government building" to include parking facilities. IC 36-9-13-3 provides:

(b) For the purposes of this chapter, "government building" includes:

(1) The land used in conjunction with such a structure; and

(2) The equipment, facilities, appurtenances, materials, and supplies that the board of directors of the building authority considers necessary or convenient to make such a structure and land suitable for use under this chapter, including:

(A) Heating facilities;

(B) Sewage facilities;

(C) Landscaping;

(D) Walks;

(E) Drives; and

(F) Parking facilities.

An "improvement" likewise includes parking facilities. IC 36-9-1-2. The county argues that even though the legislature has not defined "courthouse", logic dictates that a courthouse should include the same amenities as a government building.

■ The court finds the county's argument persuasive. The parking lot is a necessary and integral component of the courthouse. The lot's location across the street rather than adjacent to the courthouse does not make it a less necessary or integral component of the courthouse. The parking lot, therefore, is included in the definition of the term "courthouse" as used in IC 36-9-14-2.

The State Board further argues that the commonly accepted meaning of "construction" does not include demolition. Thus the State Board concludes that under IC 36-9-14-2 the county may not spend money from the Cumulative Capital Development Fund to demolish the Potter Building.

The cases which construe "construction" vary according to the context of each case. In zoning cases cited by the State, the construction is narrow. *See First Nat'l Bank & Trust Co. v. City of Rockford* (1977), 47 Ill.App.3d 131, 5 Ill.Dec. 509, 361 N.E.2d 832, *Alexander v. Bldg. Inspector of Provincetown* (1966), 350 Mass. 370., 214 N.E.2d 876; *McClung v. County of Henrico* (1959), 200 Va. 870, 108 S.E.2d 513. *See also Ogilvie v. Steele by Steele* (1983), Ind.App., 452 N.E.2d 167; *Muirhead v. Pilot Properties, Inc.* (1972) Miss., 258 So.2d 232.

Generally, in cases concerned with construction financing the courts have broadly construed the term. In *Johnson v. Cummings* (1984), 281 Ark. 229, 663 S.W.2d 168, it was held to include a land purchase; in *Edge v. Brice* (1962), 253 Iowa 710, 113 N.W.2d 755, it was held to include cost of relocating public utilities as part of highway construction; in *Ostrander v. City of Salmon* (1911), 20 Idaho 153, 117 P. 692, it

was held to include purchase of water works already constructed; in *Multnomah County v. Union Pacific Railroad* (1984), 297 Or. 341, 685 P.2d 988, it was held to include inauguration of a public crossing as well as actual construction. The case at bar is concerned with the financing of the first step in constructing a parking facility, namely the financing of the demolition of the Potter Building. The term "construction" as used in this case requires a broad definition.

The broad authority granted to local government units to conduct their own affairs also warrants a broad interpretation of the term "construction". IC 36–1–3–2 provides that the state's policy is "to grant units all the powers that they need for the effective operation of government as to local affairs" and IC 36–1–3–4(b) provides

A unit has:

(1) all powers granted to it by statute; and

(2) all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute.

■ As did the county in *Hindenlang, supra,* Henry County has not only express statutory authority to make expenditures for the purpose of constructing courthouses, but also "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." IC 36–1–3–4(b).

In view of the foregoing, this court finds that as used in the context of this case the term "construction" is to be defined more broadly than the State Board suggests.

Local government units are vested with a broad scope of authority in conducting their own local affairs. The demolition of the Potter Building is the first step in constructing a parking lot for the courthouse. Therefore, this court holds that the term "construction" as used in IC 36–9–14–2 includes the demolition of existing structures in order to erect a courthouse or an adjunct facility such as a parking lot.

■ In conclusion, the court finds that the parking lot is a necessary and integral component of the courthouse. The lot's location across the street rather than adjacent to the courthouse does not make it a less necessary or integral component of the courthouse. The county has authority to use money from the Cumulative Capital Development Fund to demolish the Potter Building for the purpose of constructing the courthouse parking lot.

The decision of the State Board denying the county's petition for additional appropriation is contrary to law. The State Board's motion for summary judgment is denied and the county's motion for summary judgment is granted. The State Board's determination is reversed and this cause is remanded for further action in accordance with this opinion.