**Geneva HENTHORNE, as Personal Representative of the Estate of Edward Heideman, Plaintiff,**

v.

**LEGACY HEALTHCARE, INC., d/b/a Community Care Center of Seymour; Sunshine Rehab Services, Inc.; Healthstar International, Inc.; and Southwest Technologies, Inc., Defendants.**

**Legacy Healthcare, Inc., d/b/a Community Care Center of Seymour, Appellant/Cross–Claim Plaintiff,**

v.

**Sunshine Rehab Services, Inc., Appellee/Cross–Claim Defendant.**

No. 36A01–0106–CV–244.

Court of Appeals of Indiana.

March 13, 2002.

⚷6

Kevin C. Schiferl, Julia Blackwell Gelinas, Allison S. Avery, Locke Reynolds, Indianapolis, IN, Attorneys for Appellant.

Alastair J. Warr, Mark W. Pfeiffer, Harrison & Moberly, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant/cross-claim plaintiff Legacy Healthcare, Inc., d/b/a Community Care Center of Seymour ("Legacy Healthcare") appeals the trial court's denial of its motion for summary judgment in favor of appellee/cross-claim defendant Sunshine Rehab Services, Inc. ("Sunshine Rehab"). Legacy Healthcare contends that it was entitled to summary judgment on its claims enforcing Sunshine Rehab's duties to defend and indemnify it upon Geneva Henthorne's suit for negligence resulting in personal injury.

### FACTS

The undisputed designated facts are as follows. Sunshine Rehab provides physical, occupational, and speech therapy services to nursing facility residents. Legacy Healthcare hired Sunshine Rehab to provide such services at ten of Legacy Healthcare's nursing facilities, including Community Care Center of Seymour. Legacy Healthcare and Sunshine Rehab signed separate agreements for each nursing care facility. The parties signed a one-year Service Agreement, providing for Sunshine Rehab's therapy services, which commenced on March 1, 1997.

The Service Agreement included the following indemnity clause: [1]

[Sunshine Rehab] agrees to maintain such insurance as will protect [Sunshine Rehab] from any and all claims of any nature for the damage to property or from personal injury, including death, made by anyone which may arise from operations carried on . . . by [Sunshine Rehab], any subcontractor, or by anyone directly or indirectly engaged or employed by [Sunshine Rehab]. **[Sunshine Rehab] agrees to save defend indemnify an [sic] hold [Legacy Healthcare] harmless of and from any and all liability, loss, cost or expenses incurred directly or indirectly from any act or [o]mission by [Sunshine Rehab] or [Sunshine Rehab's] agents, employees or invitees from any cause or causes arising from or relating to [Sunshine Rehab's] performance under this agreement.**

---

1. As discussed below, this indemnity clause embraces two duties: the duty to defend and the duty to indemnify. We refer to the paragraph as an "indemnity clause" for ease of expression.

Appellant's App. at 61–62 (emphasis in original).

In exchange for Sunshine Rehab's services, Legacy Healthcare agreed to pay for those services within sixty days from the receipt of invoice. By June 1998, Legacy Healthcare had missed several payments and owed Sunshine Rehab $38,186.95 for services rendered to Community Care Center of Seymour, in addition to payment for services rendered to the other nursing care facilities. Accordingly, on June 1, 1998, the parties executed a promissory note for payment of services Sunshine Rehab had rendered to all ten of Legacy Healthcare's nursing facilities including Community Care Center of Seymour. Appellant's App. at 127. Legacy Healthcare owed a total of $1,350,000 and eventually paid all but $474,982.66 in principal before Sunshine Rehab claimed default on the note on September 1, 2000. Appellant's App. at 104, 106.

The instant case involves the application of the indemnity clause to a suit brought for injuries to a Legacy Healthcare resident. On October 23, 1997, Edward Heideman was a resident at Community Care Center of Seymour. That same day, an occupational therapist employed by Sunshine Rehab caused severe burns to Heideman's hand, abdomen, and face when the therapist applied "gel-mitt" heat pads to him. Appellant's App. at 62–63 (citing Sunshine Rehab's "Progress Notes" for Heideman's occupational therapy and paragraph 11 of Henthorne's Complaint); Appellee's App. at 151; Appellee's brief at 1 n. 1. Nearly two years later, Geneva Henthorne, on behalf of Heideman's estate, sued both Legacy Healthcare and Sunshine Rehab, among others, for Heideman's injuries. Legacy Healthcare, in turn, filed a cross-claim against Sunshine Rehab, seeking a right of indemnification for any damages entered against it on account of Heideman's injuries and a right of defense against any claims. Sunshine Rehab filed a counter cross-claim against Legacy Healthcare, seeking damages for nonpayment of services in violation of the Service Agreement.

Sunshine Rehab later filed a motion for partial summary judgment against Legacy Healthcare, seeking payment for services rendered in the amount of $474,982.66 for breach of the Promissory Note. Although Legacy Healthcare did not file a response to Sunshine Rehab's motion, it subsequently filed its own motion for summary judgment bringing claims for indemnification and defense. Arguing that the Service Agreement was valid and enforceable, Legacy Healthcare claimed that Sunshine Rehab had breached the agreement by failing to indemnify it for Heideman's injuries and for failing to defend it against Henthorne's claim. Sunshine Rehab filed a response to Legacy Healthcare's motion for summary judgment, contending that Legacy Healthcare had breached the agreement and so was not entitled to enforce the indemnity clause. The trial court heard argument on both motions on the same day and ultimately granted Sunshine Rehab's motion for summary judgment while denying Legacy Healthcare's. The trial court determined that, because Legacy Healthcare had "breached the Service Agreement by failing to pay Sunshine Rehab," it was not entitled to indemnification. Appellant's App. at 13. Legacy Healthcare now appeals the denial of its motion for summary judgment.

## DISCUSSION AND DECISION
### I. Standard of Review

On appeal, the standard of review of a summary judgment motion is the same as that used in the trial court. Summary judgment is appropriate only where the evidence shows that there is no genuine

issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). The party seeking summary judgment has the burden of demonstrating that no question of fact exists as to any material issue and that it is entitled to judgment as a matter of law. *Cavinder Elevators, Inc. v. Hall,* 726 N.E.2d 285, 290 (Ind.2000). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Durham ex rel. Estate of Wade v. U–Haul Int'l,* 745 N.E.2d 755, 758 (Ind.2001). The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Durham ex rel. Estate of Wade,* 745 N.E.2d at 758.

■ The trial court here entered specific findings and conclusions. However, our standard of review is unchanged by the entry of findings of fact and conclusions thereon. *Grzan v. Charter Hosp. of Northwest Ind.,* 702 N.E.2d 786, 790 (Ind. Ct.App.1998). Specific findings and conclusions are not required in the summary judgment context, and although they offer valuable insight into the trial court's rationale for its judgment and facilitate appellate review, they are not binding on this court. *See id.*

## II. Legacy Healthcare's Claims

Legacy Healthcare does not challenge the trial court's grant of Sunshine Rehab's motion for summary judgment. Rather, Legacy Healthcare contends that it has rights to defense and indemnity, as a matter of law, from Sunshine Rehab. Sunshine Rehab, on the other hand, maintains that Legacy Healthcare had breached the agreement before these duties accrued and that such breach excuses Sunshine's indemnification and defense of Legacy Healthcare. To address these arguments, we first turn to law of contractual indemni-

ty between parties who are neither insurers nor insureds.

■ In general, an indemnity agreement involves a promise by one party (indemnitor) to reimburse another party (the indemnitee) for the indemnitee's loss, damage, or liability. *See* Maurice T. Brunner, Annotation, *Liability of Subcontractor upon Bond or Other Agreement Indemnifying General Contractor Against Liability for Damage to Person or Property,* 68 A.L.R.3d 7, 24 (1976); *Black's Law Dictionary* 772 (7th ed.1999); *see also* 41 Am. Jur.2d *Indemnity* § 1, at 348 (1995) ("Indemnity requires full reimbursement, and transfers liability from one who has been compelled to pay damages to another who should bear the entire loss"). Indemnity agreements are contracts subject to the rules and principles of contract construction. *TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co.,* 542 N.E.2d 1373, 1377 (Ind.Ct.App.1989). If the words of an indemnity agreement are clear and unambiguous, they are to be given their plain and ordinary meaning. *Id.* Hence, we will construe an indemnity agreement to cover all losses and damages to which it reasonably appears the parties intended it to apply. *Essex Group, Inc. v. Nill,* 594 N.E.2d 503, 506 (Ind.Ct.App. 1992) (*Essex IV*).

■ The indemnity agreement here omitted serial commas between key verbs imposing duties but is still intelligible: Sunshine Rehab **"agrees to save defend indemnify an [sic] hold [Legacy Healthcare] harmless of and from any and all liability, loss, cost or expenses."** Appellant's App. at 61 (emphasis in original). "Save harmless" and "hold harmless" are synonymous with "indemnify" and thus signify no separate duties. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 436 (2d ed.1995) (citing *Brentnal v. Holmes,* 1 Root (Conn.) 291, 1 Am. Dec.

44, 1791 WL 252 (1791)). However, the duty to defend is a duty independent of the duty to indemnify against loss or liability. *See Ozinga Transp. Sys., Inc. v. Mich. Ash Sales, Inc.,* 676 N.E.2d 379, 388 (Ind.Ct. App.1997) (holding that the indemnity contract required indemnitor to "defend and indemnify" the indemnitee, and remanding to the trial court for further proceedings on the indemnification claim and for calculation of indemnitee's costs in *defending* the action), *trans. denied; cf. Seymour Mfg. Co. v. Commercial Union Ins. Co.,* 665 N.E.2d 891, 892 (Ind.1996) (reviewing an insurance contract and beginning with the principle that the duty to defend is broader than the duty to indemnify). According to general principles of contract interpretation, then, there appear to be two main duties contained in this indemnity clause: 1) Sunshine Rehab promised to indemnify Legacy Healthcare for liability or loss to a third party where Sunshine Rehab bears responsibility for that liability or loss; and 2) Sunshine Rehab promised to defend Legacy Healthcare from liability to a third party where Sunshine Rehab bears responsibility for the injury leading to that liability.

■ A critical distinction about liability must be made at this point. In Indiana one party may contract to indemnify the other party for *the other party's* own negligence. *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols,* 583 N.E.2d 142, 145 (Ind.Ct.App.1991). However, this may only be done if the indemnitor knowingly and willingly agrees to such indemnification. *Id. But cf.* IND.CODE § 26–2–5–1 (declaring indemnity agreements in "construction and design contracts," purporting to indemnify the indemnitee for the indemnitee's "sole negligence," unenforceable as against public policy). Such clauses indemnifying the indemnitee for the indemnitee's own negligence are strictly construed and will not be held to provide indemnification unless it is stated in clear and unequivocal terms. *Moore Heating & Plumbing,* 583 N.E.2d at 145. We disfavor these indemnity clauses because we are mindful that to obligate one party to pay for the negligence of another is a harsh burden that no party would lightly accept. *Id.*

■ The indemnity clause here did not unambiguously express that Sunshine Rehab would defend and indemnify Legacy Healthcare for Legacy Healthcare's own negligence. Without such an explicit provision, Sunshine Rehab is not responsible for costs of defense and indemnification resulting from Legacy Healthcare's own negligence.

### A. Duty to Indemnify Against Liability and Loss

■ The first issue in the instant case concerns whether Sunshine Rehab's duty to indemnify Legacy Healthcare was triggered. This court has stated that generally the duty to indemnify does not arise until the party seeking indemnity *"suffers loss or incurs damage." Essex IV,* 594 N.E.2d at 507 (emphasis supplied). In other words, the duty "to indemnify does not arise *until* the party seeking indemnity suffers loss or damages; that is, *at the time of payment* of the underlying claim, *payment* of a judgment on the underlying claim, or *payment* in settlement of the underlying claim." *TLB Plastics,* 542 N.E.2d at 1376 (footnote omitted) (emphasis supplied). In *TLB Plastics,* this court held that the duty to indemnify had not accrued because the party seeking indemnity had not suffered a loss. *Id.* at 1377.

■ Three years later, in *Essex IV,* this court appeared to relax the requirement that a party seeking indemnity must pay a claim before the duty to indemnify arises. We noted that the party seeking

indemnity had not paid any amount to the injured party. *Essex IV,* 594 N.E.2d at 507. We also observed that the party seeking indemnity had "not incurred any losses from *future liability." Id.* (emphasis supplied). Our decision in *Essex IV* fell in line with what has been described as the more widely accepted rule: namely, "where there is a promise to indemnify *against liability, and not merely against loss or damage, the obligation of the indemnitor to pay arises when the liability of the [party seeking indemnity] is established,* and the [party seeking indemnity] need not prove that he has made payment." Brunner, *supra,* at 59 (emphasis supplied); *see also* 42 C.J.S. *Indemnity* § 22 (1991) ("Where the indemnity is against liability, the cause of action is complete and the [party seeking indemnity] may recover on the contract as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover.").

Here, the indemnity clause states: Sunshine Rehab **"agrees to save defend indemnify an [sic] hold [Legacy Healthcare] harmless of and from any and all liability, loss, cost or expenses"** caused by Sunshine Rehab. Appellant's App. at 61 (emphasis in original). The duty to indemnify, therefore, is triggered when either Legacy Healthcare pays a claim or its liability in an underlying claim becomes fixed. The liability in the underlying claim must be a result of Sunshine Rehab's negligence and not Legacy Healthcare's own negligence. In its motion for summary judgment, Legacy Healthcare presented no designated facts showing either that it had paid the underlying claim or that its liability had become fixed. As a matter of law, therefore, Legacy Healthcare was not entitled to summary judgment on its claim for indemnity against liability.

### B. *Duty to* Defend *Against Liability*

The second issue involves whether Sunshine Rehab's duty to defend Legacy Healthcare has been triggered. In its response to Legacy Healthcare's motion for summary judgment, Sunshine Rehab argues only that Legacy Healthcare had materially breached the contract by missing several payments for services, and, therefore, Sunshine Rehab is no longer obligated to defend or indemnify it for Heideman's injuries. Appellee's App. at 152. According to Sunshine Rehab, Legacy Healthcare's prior material breach excuses Sunshine Rehab's subsequent performance. As Sunshine Rehab points out, this court has held that "a party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Harvest Life Ins. Co. v. Getche,* 701 N.E.2d 871, 875 (Ind.Ct.App.1998), *trans. denied.* A party who fails to make payments as required by a contract is guilty of a breach thereof. *Id.; Licocci v. Cardinal Assocs., Inc.,* 492 N.E.2d 48, 52 (Ind.Ct.App.1986), *trans. denied.*

The trial court determined that Legacy Healthcare had breached the Service Agreement by failing to pay Sunshine Rehab and, therefore, was not entitled to indemnity or defense. Appellant's App. at 13. In the same entry of judgment, the trial court recognized the Promissory Note as a valid contract to which Legacy Healthcare was in breach. Appellant's App. at 12. We think that the trial court incorrectly separated the Promissory Note from the Service Agreement in its denial of Legacy Healthcare's motion for summary judgment. The Promissory Note, as a matter of law, was a modification of the

Service Agreement, not a stand-alone agreement in its own right.

■■■■ Ordinary contract law supports our conclusion. Just as parties may voluntarily enter into a contract, they may voluntarily modify that same contract. 17A Am.Jur.2d *Contracts* § 520, at 536 (1991). Written modification of a contract is a defense against breach of contract. *See Miller v. Geels*, 643 N.E.2d 922, 930 (Ind.Ct.App.1994), *trans. denied.* "The modification of a contract, since it is also a contract, requires all the . . . elements of a contract." *Hamlin v. Steward*, 622 N.E.2d 535, 539 (Ind.Ct.App.1993). In addition to an offer and acceptance, modification of a contract requires sufficient consideration: that is, there must be a bargained-for exchange. *See id.* While consideration must be sufficient, we do not inquire into the adequacy of consideration. *Id.*

It is undisputed that before and after the injury to Heideman, despite Legacy Healthcare's late or nonpayment for services, Sunshine Rehab continued to supply services to Legacy Healthcare. The parties, accordingly, modified the payment schedule for the services Sunshine Rehab had supplied. The original Service Agreement provided that Legacy Healthcare would pay Sunshine Rehab within sixty days of receipt of invoice. Appellant's App. at 69. The Promissory Note, relied on by the trial court here, set forth a schedule of monthly payments plus interest Legacy Healthcare promised to make. Appellant's App. 127–31. This modification of the original Service Agreement's payment schedule, in essence, excused prior breaches in the form of late and non-payments. As a result, Sunshine Rehab's denial of its duty to defend under the original Service Agreement, because of "prior breaches" by Legacy Healthcare, must fail.

■■■■ Sunshine Rehab also contends that it has no duty to defend Legacy Healthcare because Heideman's suit was not filed until September 1999—well after it had stopped providing services to Legacy Healthcare nursing facilities. We think the text of the indemnity clause and common sense favor a different interpretation.

First, while Sunshine Rehab's duty to defend was not triggered until it received notice of the claim against Legacy Healthcare, Sunshine Rehab's injuring of Heideman in October 1997 indisputably gave rise to the claim. The text of the indemnity clause does not condition Sunshine Rehab's duties of indemnification or defense on a *demand* for indemnification or defense made before the contract is fulfilled or breached. Rather, Sunshine Rehab promised to defend and indemnify Legacy Healthcare from **"any and all liability, loss, costs or expenses"** arising from Sunshine's negligence.

■■■■ Second, the date of the negligent act causing injury is the date for deciding when an indemnitee should be held responsible to defend or indemnify after a demand or claim is made. Under the interpretive regime Sunshine Rehab advocates, an indemnitee could negligently cause harm, fulfill the terms of the contract, and then deny any duty to indemnify or defend once a demand is made after the contract is completed. Such a practice could leave contractors and subcontractors with little certainty in the contractual allocation of risks of doing business. Moreover, some indemnitors would have less incentive to perform their work nonnegligently, knowing that as soon as they have fulfilled the terms of the agreement no demand for indemnity may be made. The date of the injury should, therefore, trigger the obligations to defend and indemnify. But obviously the indemnitor need not

fulfill its obligations to defend and indemnify until a demand is made.

Sunshine Rehab acknowledged that if Legacy Healthcare may enforce the indemnification clause despite breach, then indemnification should be limited to the "gel-mitt" burn suffered by Heideman. Appellee's App. at 152. In other words, Sunshine Rehab does not dispute that it bears some responsibility for the claim filed against Legacy Healthcare. Sunshine Rehab, therefore, has a duty to defend Legacy Healthcare against the claim filed by Henthorne to the extent of Sunshine Rehab's own liability. Insofar as the trial court denied Legacy Healthcare's motion for summary judgment on its request for defense against Henthorne's claim, it erred. Though Legacy Healthcare has shown that Sunshine Rehab has breached its duty to defend, Legacy Healthcare has not proved its damages from this breach. For this reason, entry of partial summary judgment only on the issue of contractual liability on the claim for defense is appropriate. *See* Ind.Trial Rule 56(C) ("A summary judgment may be rendered upon less than all the issues or claims, including without limitation the issue of liability . . . .").

■ Sunshine Rehab, however, is not contractually obligated to pay the costs of defending Legacy Healthcare that are directly attributable to Legacy Healthcare's own negligence. *See Moore Heating & Plumbing,* 583 N.E.2d at 145. Legacy Healthcare, then, must prove that: 1) it has incurred costs in defending the action; 2) these costs are not a result of its own negligence; and 3) these costs are a result of Sunshine Rehab's negligence in injuring Heideman. *See Ozinga Transp.,* 676 N.E.2d at 388 (Ind.Ct.App.1997) (remanding to the trial court for calculation of indemnitee's costs in *defending* the action). Not until Sunshine Rehab's fault has been apportioned and not until Legacy Healthcare has made the requisite showing outlined above, is it possible to calculate damages for Sunshine Rehab's breach of duty to defend.

## CONCLUSION

In sum, Legacy Healthcare has failed to show, as a matter of law, that Sunshine Rehab has breached any duty to indemnify it. Legacy Healthcare failed to designate facts in its summary judgment motion that its liability to Henthorne was fixed or that it had paid Henthorne for any underlying claim. However, Legacy Healthcare has shown that, as a matter of law, it is entitled to defense from Sunshine Rehab to the extent that Legacy Healthcare's defense costs are related to Sunshine Rehab's negligence and not Legacy Healthcare's own actions. Insofar as the trial court denied Legacy Healthcare's motion for summary judgment on its claim for defense, it erred. We reverse the trial court's denial of Legacy Healthcare's summary judgment and remand for entry of partial summary judgment on the issue of Sunshine Rehab's breach of its contractual duty to defend. Assessment of damages, if no settlement is made, must wait until fault between the two parties has been apportioned and Legacy Healthcare proves it has incurred costs in defending against liability resulting from Sunshine Rehab's negligence.

Affirmed in part and reversed in part and remanded for entry of partial summary judgment in favor of Legacy Healthcare on its claim for defense with damages to be assessed, if proved, when fault has been apportioned.

NAJAM, J., and MATTINGLY–MAY, J., concur.