**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**STEPHEN M. BRANDENBURG**
Chicago, Illinois

ATTORNEY FOR APPELLEE:

**MATTHEW J. HAGENOW**
Newby Lewis Kaminski & Jones, LLP
La Porte, Indiana

FILED
Mar 15 2013, 9:05 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MJB LAWN CARE, | ) | |
| | ) | |
| Appellant-Defendant/Cross-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A04-1207-CT-341 |
| | ) | |
| TOWER CLEANING SYSTEMS, INC., | ) | |
| | ) | |
| Appellee-Plaintiff/Cross-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-0701-CT-243

**March 15, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant/Cross-Defendant, MJB Lawn Care (MJB), appeals the trial court's summary judgment in favor of Appellee-Plaintiff/Cross-Plaintiff, Tower Cleaning Systems, Inc. d/b/a/ U.S. Maintenance (USM) on USM's request for indemnification pursuant to its the contract with MJB.

We reverse and remand.

## ISSUE

MJB raises three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court properly determined that the terms of the contract entered into between MJB and USM require MJB to defend and indemnify USM for USM's own negligence.

## FACTS AND PROCEDURAL HISTORY

In March 2003, USM entered into a written service contract with Pilot Travel Centers, LLC (Pilot) for landscaping and snow removal services at certain Pilot locations. USM's role under the contract was limited to hiring subcontractors to provide the requested services. In 2005, USM subcontracted the snow removal services for Pilot's service station in Burns Harbor, Indiana to MJB. Pursuant to the terms of the subcontract, MJB was to "name [USM] and any specified designee or beneficiary as additionally insured." (Appellant's App. p. 164). USM was not involved in the day-to-day services of snow removal. Instead, MJB received its instructions directly from Pilot as to what areas needed to be plowed.

2

On February 2, 2005, Ellen Stephens-Kahl (Ellen) and her husband, Brian Kahl, (collectively, the Kahls) stopped at the Pilot service station in Burns Harbor before travelling back to their home in Illinois. While at the service station, Ellen became injured "when she fell in a hole in [the] grating near the fuel pumps at [Pilot][.]" (Appellant's App. p. 28).

On January 30, 2007, the Kahls filed an amended complaint against Pilot, and several other defendants, including USM and MJB. After receiving the complaint, USM tendered its defense and indemnification of the claims to MJB. However, Farmers Insurance Group, MJB's liability insurance carrier, refused the tender because USM and Pilot "are not listed as additional insured's on the policy provided to MJB." (Appellant's App. p. 348). On February 27, 2007, USM filed a cross-claim against MJB seeking indemnification against the Kahls' claim of negligence. On March 1, 2007, Pilot brought a cross-claim against USM seeking defense and indemnification for Kahls' claims based on its contract with USM. On November 1, 2010, USM filed a motion for summary against MJB requesting indemnification for Kahls' claims. MJB filed a response on December 30, 2010. On March 25, 2011, the trial court conducted a hearing on USM's motion. On June 8, 2011, the trial court summarily granted USM's motion requiring MJB to "defend, indemnify and hold USM harmless from all of the claims against USM in this cause." (Appellant's App. p. 14). The trial court also decreed in its order that MJB "shall reimburse USM in full all amounts expended or incurred by USM in the defense of the claims in this cause." (Appellant's App. p. 15).

MJB now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . ., or if the undisputed facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*.

Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that in the present case, the trial court did not enter findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id.*

## II. *Indemnification*

MJB contends that the trial court erred in granting summary judgment in favor of USM and concluding that MJB was required to "defend, indemnify and hold USM harmless from all of the claims against USM in this cause." (Appellant's App. p. 14). Specifically, MJB asserts that the trial court's decision results in an obligation by MJB to indemnify USM not only for MJB's own negligence but also for any negligent acts committed by USM or Pilot. MJB maintains that this is improper as it is unsupported by the contractual language. In essence, MJB claims that pursuant to the indemnification provision of the contract, MJB's indemnification only extends to negligence arising out of MJB's actions.

Initially, we review the relevant rules of contract interpretation. When reviewing the trial court's interpretation of a contract, we view the contract in the same manner as the trial court. *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 478 (Ind. Ct. App. 2000), *trans. denied*. The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id.* Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some

other meaning was intended. *Id.* Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *Id.* The entire contract must be read together and given meaning, if possible. *Id.*

An indemnity agreement involves "a promise by one party (the indemnitor) to reimburse another party (the indemnitee) for the indemnitee's loss, damage, or liability." *Henthorne v. Legacy Healthcare, Inc*., 764 N.E.2d 751, 756 (Ind. Ct. App. 2002). The basic purpose of an indemnitee clause is to "shift the financial responsibility to pay damages from the indemnitee to the indemnitor." *Ozinga Transportation Systems, Inc. v. Michigan Ash Sales, Inc*., 676 N.E.2d 379, 386 (Ind. Ct. App. 1997), *trans. denied*. We construe an indemnity agreement to cover all losses and damages to which it reasonably appears the parties intended it to apply. *Zebrowski & Associates, Inc. v. City of Indianapolis*, 457 N.E.2d 259, 261 (Ind. Ct. App. 1983).

The indemnification provision at issue in the contract between MJB and USM reads as follows:

> B. Indemnification. To the fullest extent permitted by applicable law, you shall defend and hold harmless us and our customer and our and customer's respective officers, directors, employees, agents, shareholders, partners, joint venturers, affiliates, successors and assigns ("Indemnified Parties") from and against any and all liabilities, obligations, claims, demands, causes of action, losses, expenses, damages, fires, judgments, settlement, and penalties, including without limitation, costs, expenses and attorneys' fees incident thereto, arising out of, based upon, occasioned by or in connection with:
>
> > (1) your performance of (or failure to perform) your duties under this Agreement;
> >
> > (2) A violation of any law or any negligence, gross negligence or willful misconduct by you or your affiliates, subcontractors, agents

6

or employees during either your performance of your duties under this Agreement or otherwise while you are on the property of one of our customers; or

(3) any violation of this agreement by you or your affiliates, subcontractors, agents or employees

This indemnification obligation specified above includes all legal, defense and investigation costs, as well as other costs, expenses, and liabilities incurred by the Indemnified Parties, from and after the time when any Indemnified Party receives notification (whether verbal or written) that a claim or demand has been or will be made.

Except as otherwise provided by law, the Indemnified Parties' right to indemnification under this paragraph shall not be impaired or diminished by any act, omission, conduct, misconduct, negligence or default (other than gross negligence or willful misconduct) of the Indemnified Parties.

(Appellant's App. p. 165).

MJB contends that this clause only requires MJB to indemnify USM for claims arising from MJB's own negligence, and not for claims originating from USM's or Pilot's negligence. Absent prohibitive legislation, no public policy prevents parties from contracting as they desire. *Hagerman Contr. Co. v. Long Elec. Co.*, 741 N.E.2d 390, 392 (Ind. Ct. App. 2000), *trans. denied*. For instance, in Indiana, a party may contract to indemnify another for the other's own negligence. *Id.* However, this may only be done if the party knowingly and willingly agrees to such indemnification. *Id.* Such provisions are strictly construed and will not be held to provide indemnification unless it is so stated in clear and unequivocal terms. *Id.* We disfavor indemnification clauses because we are mindful that to obligate one party for the negligence of another is a harsh burden that a party would not lightly accept. *Id.*

This court has followed a two-step analysis to determine whether a party has knowingly and willingly accepted this burden. *Exide*, 727 N.E.2d at 480. First, the indemnification clause must expressly state in clear and unequivocal terms that negligence is an area of application where the indemnitor (in this case, MJB) has agreed to indemnify the indemnitee (in this case, USM). *See Hagerman*, 741 N.E.2d at 392. The second step determines to whom the indemnification clause applies. *Id*. Again, in clear and unequivocal terms, the clause must state that it applies to indemnification of the indemnitee by the indemnitor for the indemnitee's own negligence. *Id*.

## A. *Negligence as an Area of Application*

The first step of the analysis is to determine if the indemnification clause clearly and unequivocally states that negligence is an area of application. Here, the indemnification provision speaks of liabilities, obligations, claims, demands, losses, and expenses arising out of, based upon, occasioned by or in connection with a violation of any law or any negligence. These words, taken in this context, clearly and unequivocally demonstrate that the indemnification clause applies to negligence.

## B. *USM's Own Negligence*

When applying the second step, we must determine whether the indemnification clause clearly and unequivocally indemnifies USM and Pilot for their own negligence. In support of its argument that indemnification is only available for MJB's negligent acts and not for USM's or Pilot's, MJB refers us to *Hagerman v. Const. Corp. v. Long Elec. Co.*, 741 N.E.2d 390, 392 (Ind. Ct. App. 2000). In *Hagerman*, an injured employee of a subcontractor (Long) brought action against the general contractor (Hagerman) and the

8

general contractor brought a third-party indemnification claim against the subcontractor.

*Id.* The indemnification clause in *Hagerman* provided:

> To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damages, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligence acts or omissions of the Subcontractor, the Subcontractor's Subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless or whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in [this paragraph].

*Id.* at 392-93. Upon appeal, we held that this indemnification clause did not clearly and unequivocally state that Long was to indemnify Hagerman for Hagerman's own negligent acts. *Id.* at 393. Specifically, the court noted that the phrase "but only to the extent" clearly limited Long's obligation to indemnify Hagerman only to the extent that Long, its sub-subcontractors, employees, and anyone for whom it may be liable, were negligent. *Id.* at 393-94. Otherwise, the court continued, "the clause contained no clear statement that would give the contractors notice of the harsh burden that complete indemnification would impose." *Id.* at 394.

On the other hand, USM directs us to *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548 (Ind. Ct. App. 2003) as precedent that MJB must indemnify USM for USM's own negligence. In *GKN*, we considered an indemnification clause worded as follows:

9

[Starnes] shall indemnify and hold harmless the Owner, the Architect Engineer, and [GKN] and their agents and employees from an against all claims, damages, causes of action, losses and expenses, including attorney's fees, arising out of or resulting from the performance of the work, provided that such claim, damages, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself) including the loss of use resulting therefrom; and (2) is caused in whole or in part by any negligence act or omission of [Starnes] or any of his subcontractor's [sic], anyone directly or indirectly employed by any of them or for anyone for whose acts any of them may be liable, regardless of whether it is caused in part by a party indemnified hereunder.

*Id*. at 550. Noting that the indemnity provision included the language "regardless of whether it is caused in part by a party indemnified hereunder," we held that although Starnes could not be required to indemnify GKN for an injury that was the fault of GKN alone, it was required to indemnify GKN for GKN's own negligence if Starnes was at least partially at fault for the injury. *Id*. at 554. We noted "it is clear that the indemnification clause states that Starnes' liability for indemnification to GKN will not be negated merely because GKN is partly at fault." *Id*. at 553.

As in *Hagerman*, we hold that the indemnification clause before us fails to clearly and unequivocally state that MJB is to indemnify USM for its own negligent acts. Rather, the clause explicitly indemnifies USM and "our customer" (here, Pilot) for all liabilities and costs, arising out of MJB's "violation of . . . any negligence . . . during [MJB's] performance" or MJB's violation of the agreement. (Appellant's App. p. 165). The clause does not explicitly state that MJB must indemnify USM and Pilot for their own negligent acts.

10

USM points to the language included in its contract that "the right to indemnification" shall not be impaired or diminished by any negligence committed by USM and Pilot and compares it to *GKN*'s phrasing "regardless of whether it is caused in part by a party indemnified hereunder." We disagree that the language is similar. Whereas the phrasing in the *GKN*'s indemnification clause clearly concerns the scope or extent, *i.e.*, the *cause*, of the indemnification obligations; here, the language deals with the *right* to indemnification by USM and Pilot. In this light, the contested language is closer to the *Hagerman*'s provision that "[s]uch *obligation* shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity." *See Hagerman*, 741 N.E.2d at 393 (emphasis added). Simply put, based upon this phrase, MJB may not disregard its duty to indemnify USM and Pilot for USM's negligence merely because USM and Pilot may also be negligent under the circumstances. However, the clause does require MJB to indemnify USM and Pilot for MJB's negligence. Therefore, the trial improperly granted summary judgment to USM. We reverse the trial court's order.[1]

## CONCLUSION

Based on the foregoing, we conclude that the trial court improperly determined that the terms of the contract entered into between MJB and USM required MJB to defend and indemnify USM against all claims. Rather, pursuant to the contractual

---

[1] In its brief, USM also argues that MJB breached the contract by failing to have USM included as an additional insured on its insurance policy. MJB concedes this breach. However, this admission does not change our result. MJB's admitted breach of contract only relates to USM additional insured's status, it does not expand the indemnification provision beyond that explicitly contracted for and found by this court.

11

indemnification terms, MJB is only required to indemnify USM and Pilot for MJB's negligent acts.

Reversed and remanded for further proceedings.

BAKER, J. and BARNES, J. concur